# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JANICE SPINELLI,** | ) | |
| **ADMINISTRATOR OF THE** | ) | |
| **ESTATE OF PHILLIP SPINELLI,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | **Case No. 04 C 5866** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **MONUMENTAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Janice Spinelli ("Plaintiff"), filed a declaratory judgment suit to recover life insurance benefits that were denied to her by Defendant, Monumental Life Insurance Company ("Monumental Life" or "Defendant"). The suit was filed in the DuPage County Circuit Court and removed to this Court by Defendant. Defendant denies any liability to Plaintiff, due to material omissions or misrepresentations in the application for reinstatement of coverage. Defendant filed its Counterclaim seeking to rescind the policy or, in the alternative, a declaration that the reinstated policy was null and void *ab initio*, and that it has no obligation or liability other than to refund the premiums paid from the effective date of the policy's reinstatement.

On June 21, 2006, the Court permitted plaintiff's previous counsel to withdraw and

granted Plaintiff's current counsel leave to enter an appearance. At that time the parties had fully briefed a trial on the papers, and the case was awaiting oral arguments. Given the substitution of counsel, the Court granted Plaintiff the opportunity to submit a new brief, and Defendant was permitted to submit a new reply brief.

The Court conducted a bench trial on the papers and heard oral argument on February 7, 2006. The Court has carefully considered the declarations filed by the parties, the exhibits introduced into evidence, and the briefs and arguments of counsel. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. THE PARTIES

Plaintiff is, and was at the time of filing this present action, a citizen of the State of Illinois and the widow of Phillip Spinelli ("Mr. Spinelli"). R. ¶ 1; Spinelli Dep. Ex. 3 ¶¶ 6-7.[1]

---

[1] Citations to the record are in the following form: Parties' Joint Factual Record is cited as R. ¶ _; Plaintiff Janice Spinelli's Deposition is cited as Spinelli Dep., Ex. 3 ¶¶ _; the Affidavit of Linda Baker is cited as Baker Aff., Ex. 1 ¶ _; Mr. Spinelli's Application for Reinstatement is cited as Reinstatement App., Ex. 10; and Stipulations made by the parties are cited as Stipulations, Ex. 11 ¶ _. Citations to the parties' exhibits attached to their Supplemental Briefs in Support of Judgment at Trial on the Papers are in the following form: Plaintiff's exhibits are cited as Plaintiff's Ex. _; and Defendant's exhibits are cited as Defendant's Ex. _. Plaintiff's Supplemental Brief is cited as Pla. Supp. Brief, and Defendant's Supplemental Brief is cited as Def. Supp. Brief.

Monumental Life is a Maryland corporation, with its headquarters and principal place of business in Baltimore, Maryland, and is a citizen of the State of Maryland. R. ¶ 2. Monumental Life is authorized to transact insurance business in the State of Illinois. *Id.*

## B. JURISDICTION, VENUE, AND CHOICE OF LAW

This is an action brought by Plaintiff, as the alleged designated primary beneficiary of the estate of Mr. Spinelli, to recover benefits purportedly provided under a universal life insurance policy issued by Defendant to Mr. Spinelli, now deceased. R. ¶ 3. Jurisdiction is proper in the Court pursuant to 28 U.S.C. § 1332(a)(1) since diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000 exclusive of interests and costs. *Id.* Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because this is a civil action brought in the judicial district in which a substantial part of the events giving rise to Plaintiff's claim occurred, and under 28 U.S.C. § 1391(a)(3) since Defendant was subject to personal jurisdiction in this judicial district at the time this civil action was commenced. R. ¶ 4.

The parties have consented to a Magistrate Judge's jurisdiction pursuant to 28 U.S.C. 636(c)(1). As both parties either reside in or transact business in Illinois and the Court has diversity jurisdiction over the state law claim, the Court will apply state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As the insured party, Mr. Spinelli, was domiciled in Illinois at the time of his application for insurance, the Court applies Illinois law. *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 477 (7th Cir. 1999) (in life insurance cases, the

federal court "picks the law of the state where the insured was domiciled when the policy was applied for … unless some other state has a more significant relationship").

## C.  THE POLICY

### 1.  Issuance

On August 12, 1985, Defendant issued a universal life insurance policy, designated as Policy Number MM106030 ("the Policy"), to Mr. Spinelli with an initial face value of $50,000.  R. ¶ 5.  Mr. Spinelli was the designated owner and insured under the Policy.  *Id.* On July 12, 1988, the value of the Policy was increased to $125,000.  R. ¶ 6.

### 2.  Terms

#### a.  Premium Payment

The Policy specifies that planned periodic payments of $113.12 are due on or before the twelfth of each month until the Policy's maturity date of August 12, 2035.  R. ¶ 9.

#### b.  Grace Period

In the event a planned periodic payment is outstanding after the twelfth of the month, a grace period provides that the Policy will stay in effect for sixty-one days, allowing the Policy holder additional time to pay the negative balance.  R. ¶ 10.

#### c.  Lapse

If the Policy holder fails to provide Monumental Life with sufficient payment to cover the negative balance within the grace period, the Policy will lapse thirty-one days after Monumental has provided written notice to the Policy holder.  R. ¶¶ 10-11.

#### d. Reinstatement

In the event of a lapse, the Policy will be reinstated at any time within five years from the date of the lapse and prior to the maturity date only upon submission of satisfactory proof of insurability, a premium payment for two months of coverage, and the payment of any loan balance.  R. ¶ 12.

### 3. Beneficiary Designation

In October 1991, Plaintiff was designated by Mr. Spinelli as the primary beneficiary of the Policy.  R. ¶ 13.

## D. SUMMARY OF MR. SPINELLI'S MEDICAL RECORDS DURING THE 1990'S

### 1. Stenosis

In October and November 1992 and August 1994, Mr. Spinelli was diagnosed with stenosis[2] in both the arterial and circumflex coronary arteries.  R. ¶ 14.  He received treatment from 1992 through 1998, which included at least three cardiac catherizations, seven angioplasties, and the insertion of four stents.  R. ¶ 15.

### 2. Gastroesophageal Reflux Disease

In January 1994, Mr. Spinelli was diagnosed with severe gastroesophageal reflux disease (GERD).  R. ¶ 14.

---

[2]  "A narrowing of the cardiac valves."  STEDMAN'S MEDICAL DICTIONARY, 1673 (26th ed. 1995).

### 3. Bladder Tumor

In August 1994, Mr. Spinelli was diagnosed with a bladder tumor. *Id.* He underwent a resection of the tumor in August 1994, the biopsy results of which were negative. R. ¶ 17. As a result of his heart and bladder conditions, in August and November 1994, and again in January 1995, Mr. Spinelli's primary care physician, James Boblick, M.D. ("Dr. Boblick"), placed him on work restriction, which instructed him not to lift anything in excess of fifty pounds. R. ¶ 18.

### 4. Angina and Coronary Artery Disease

In November and December 1998 and August 1999, Mr. Spinelli was diagnosed with angina and coronary artery disease. R. ¶ 14. He took prescribed medication to regulate his chronic angina but continued to experience exertional and occasional resting angina. R. ¶ 16. In addition to the regularly prescribed medication, Mr. Spinelli took nitroglycerin to combat particularly severe episodes of chest pain. *Id.* In November 1998, Mr. Spinelli's supervisor required him to undergo an evaluation at an occupational medical clinic before he could resume his duties. R. ¶ 19. Despite the detection of an arterial occlusion, Mr. Spinelli was ultimately cleared to return to work. *Id.*

## E. THE POLICY'S ACCOUNTING HISTORY

### 1. Monumental Life's General Accounting Practices

Monumental Life maintains accounting records that document the amount of premium payments and date they are received. R. ¶ 21. Further accounting records reflect the corresponding monthly cash value of a policy after such payments are credited. *Id.*

Monumental Life also maintains a log that documents the date on which it mails letters to owners of universal life insurance policies.  R. ¶ 22.  Included in this log are the dates on which Monumental Life mails a written notice that a policy has entered into a grace or lapse period.  *Id.*

A grace notice advises a policy holder that he cash value of her policy and premium payments received are insufficient to cover the monthly premium balance.  R. ¶ 23.  It further informs a policy holder that she must correct the negative balance in the account within the allotted grace period or the policy will lapse.  *Id.*  A lapse notice advises a policy holder that he has failed to correct the outstanding balance in his account within the allotted grace period, which results in the termination of his policy.  R. ¶ 24.  Monumental Life sends all grace and lapse notices to the policy owner's last known address on record.  R. ¶ 25.

### 2.  General Accounting Practices of Plaintiff and Mr. Spinelli

Mr. Spinelli handled all correspondence and communications with Monumental Life about the Policy and Plaintiff did not open Monumental Life statements or correspondences addressed to her husband.  R. ¶ 40.

### 3.  The Policy's Payment History

Every monthly premium payment that Plaintiff missed can be accounted for and categorized into one of three categories.  In the first category, the policy had sufficient cash value to cover applicable monthly charges.  Payments due on December 12, 1985; October 12, 1986; May 12, 1987; September 12, 1987; January 1, 1988; October 12, 1988; November 12, 1988; January 12, 1995; March 12, 1995; September 12, 1995; September 12, 1996; July

12, 1997; January 12, 1998; April 12, 1998; June 12, 1998; and July 12, 1999 fall into this category. Baker Aff., Ex. 1, ¶¶ 7-8. In the second category, where the policy's cash value was insufficient, Monumental Life received and credited payment within the applicable sixty-one-day grace period to cover applicable monthly charges. Payments due on August 12, 1985; December 12, 1988; May 12, 1989; July 12, 1989; June 12, 1991; July 12, 1991; March 12, 1992; September 12, 1992; December 12, 1992; February 12, 1993; February 12, 1994; May 12, 1994; October 12, 1995; March 12, 1996; and February 12, 2000 fall into this category. *Id.* at ¶¶ 9-11. In the final category, the policy lapsed and a formal reinstatement was submitted to Monumental Life to place the policy back in force. Payments due on November 30, 1993; July 8, 1995; and on March 7, 2001 are in this category. Baker Aff., ¶¶ 13-17.

### 4. Payment History Leading Up to Final Lapse

#### a. Insufficient Cash Value to Cover Monthly Premiums

On September 18, 2000, Monumental Life received a $60.00 payment from Mr. Spinelli, $55.50 of which was credited to the Policy's accumulated cash value of $28.38, resulting in a balance of $83.88. R. ¶ 29. Monumental Life then deducted $69.74 for the applicable monthly premium charge resulting in a net balance of $14.14. *Id.* Monumental Life then credited 4.5% interest to the remaining balance, resulting in an accumulated cash value of $14.19 as of October 1, 2000. *Id.*

On October 23, 2000, Monumental Life received a $60.00 payment from Mr. Spinelli, $55.50 of which was credited to the Policy's accumulated cash value of $14.19, resulting in

a balance of $69.69. R. ¶ 30. The applicable monthly premium charge for this month was $69.75, resulting in a negative balance of $0.06. *Id.*

On November 12, 2000, another monthly premium of $69.75 was due, but Monumental Life received no payment from Mr. Spinelli. R. ¶¶ 31-32.

On December 19, 2000, Monumental Life received a $5.00 payment from Mr. Spinelli, $4.62 of which was credited to the Policy's negative balance for the payment due on October 12, 2000, resulting in a total cash value of $4.56. R. ¶ 32. The remaining cash value was insufficient to cover the outstanding balance from the November 2000 and December 2000 premiums. *Id.*

### b. Grace Notice

In accordance with the terms of the Policy, on December 19, 2000, Monumental Life generated and sent a grace notice to Mr. Spinelli at his last known address on record with Monumental Life, which was 1384 Rosebud Lane, Addison, Illinois. R. ¶¶ 25, 33. This was Mr. Spinelli's residential address from February 1991 to the date of his death. R. ¶ 26. The notice was sent to inform Mr. Spinelli that the Policy had an insufficient cash value and had a negative premium balance. R. ¶ 33. He was required to pay $190.48, the amount due through December 12, 2000, within the sixty-one-day grace period to avoid losing coverage. *Id.* Monumental Life received two payments totaling $85.00 from Mr. Spinelli during the month of January 2001. R. ¶¶ 35-36.

On January 21, 2001, Monumental Life generated and sent another grace notice to Mr. Spinelli at his home address informing him that his balance was still outstanding and that he

must pay $134.51 within the allotted grace period to avoid having the Policy lapse.  R. ¶ 37.

The next payment that Monumental Life received from Mr. Spinelli came on March 5, 2001.

R. ¶ 38.  That payment of $60.00 was short of the balance that Mr. Spinelli owed.  *Id.*

Additionally, premiums due in January 2001 and February 2001 remained outstanding.  *Id.*

### c.  Accounting Records of Lapse

Monumental keeps records of payments using both Universal Life Annual Reports

("Annual Reports") and Life Comm Flex-a-Life System Status Reports ("Status Reports").

The Annual Reports are not the only documents used to examine to determine if a negative

balance existed because they do not identify the Policy's on-going cash value, which

determines, after crediting a premium payment, whether the Policy has sufficient cash value

to remain in force.  Baker Aff., Ex. 2 ¶ 19-21.  The record of the Policy's on-going cash

value is contained in the Status Reports.  Baker Aff., Ex. 2 ¶ 19.  Ms. Baker, the Model

Office Coordinator for Monumental Life, explains in her affidavit that the Status Reports

show that, notwithstanding the premium payments received and credited after September 12,

2000, and before March 7, 2001, as reflected in the Annual Report, the Policy fell into a

negative cash value and ultimately lapsed consistent with the terms of the Policy.  Baker Aff.,

Ex. 2 ¶¶ 1, 4-16, 19.  The Status Reports verify that, after the October 23, 2000 premium

payment, the Policy fell into a negative cash value and, after missing November's premium**,**

any subsequent payments failed to make up premium deficiencies for the months of

December 2000, January 2001**,** and February 2001.  R. ¶¶ 29-39.

### d. Lapse Notice

On March 7, 2001, Monumental Life generated and sent a lapse notice to Mr. Spinelli at his residential address informing him that the Policy had been terminated. R. ¶ 39. He was additionally informed that the Policy's entire cash value had been used to pay the outstanding premiums, which caused the Policy to have no further value. *Id.*

### e. Electronic Log

Monumental Life maintains an electronic correspondence log of grace and lapse notices that it generates and mails. R. ¶ 22. The correspondence log verifies that Monumental Life mailed a grace notice, dated December 19, 2000, to Mr. Spinelli at his home address, which informed him that the Policy was in the grace period and instructed him to submit $190.48 to avoid losing coverage. R. ¶¶ 22-23, 33. The correspondence log also confirms that a second grace notice was generated and mailed on January 21, 2001, to Mr. Spinelli at his home address informing him that his Policy was still in the grace period and that he would lose coverage unless he submitted a payment of $134.51. R. ¶¶ 22-23, 37. Finally, the correspondence log documents that a lapse notice was generated and mailed on March 7, 2001, to Mr. Spinelli at his home address informing him that his Policy had lapsed. R. ¶¶ 22-23, 39. This Court finds, based on the correspondence log maintained by Monumental Life, that grace and lapse notices were sent to Mr. Spinelli at his home address.

## F. MR. SPINELLI'S ATTEMPT TO REINSTATE THE POLICY

### 1. Cancer Diagnosis After Policy Lapse and Prior to Reinstatement Application

#### a. Visit With Dr. Boblick

On March 6, 2001, Mr. Spinelli visited Dr. Boblick, complaining of a cough. R. ¶ 43. After examining Mr. Spinelli, Dr. Boblick referred him for further examination to Phillip J. Cozzi, M.D. ("Dr. Cozzi"), a thoracic specialist at Elmhurst Hospital. *Id.*

#### b. Visit With Dr. Cozzi

On April 2, 2001, Plaintiff and Mr. Spinelli met with Dr. Cozzi, who had analyzed a CT scan taken of Mr. Spinelli's chest on March 27, 2001. R. ¶ 44. Dr. Cozzi performed a bronchoscopy and endobronchial biopsy after seeing something suspicious in the scan. *Id.* On April 5, 2001, Dr. Cozzi diagnosed Mr. Spinelli with lung cancer. R. ¶ 45. Dr. Cozzi indicated his plan to operate to remove the cancerous tumor, but Plaintiff insisted on a second opinion. *Id.*

#### c. Visit With Dr. Mason

On April 9, 2001, Plaintiff and Mr. Spinelli met with Robert Mason, M.D. ("Dr. Mason"), an oncology specialist at Loyola University Medical Center. R. ¶¶ 45-46. Dr. Mason examined Mr. Spinelli, and scheduled him to undergo another CT scan on April 10, 2001. R. ¶ 46.

### 2. Reinstatement Application

On April 21, 2001, Mr. Spinelli signed and submitted to Monumental Life an application for reinstatement of the Policy. R. ¶ 47. Ms. Spinelli confirmed that it is the

signature of her late husband that appears on the reinstatement application. Spinelli Dep., ¶ 60. The application indicated that the Policy had lapsed and the application was being submitted to Monumental Life in order to reinstate coverage. R. ¶ 49. Plaintiff admits that she had no knowledge that the Policy had lapsed or that her husband had submitted a reinstatement application. R. ¶ 48.

As part of the reinstatement application, Mr. Spinelli was required to submit satisfactory proof of eligibility. R. ¶ 50. Mr. Spinelli was requested to provide an answer to the following inquiry pertaining to his health and medical history:

> The undersigned represent that the above named persons insured under this policy are free from all disease, deformities or ailments, and have had no injuries, ailments or illnesses since issuance of the policy, nor consulted or been attended by a physician for any cause, except as expressly stated below. If none, state "none" below.
>
> [Answer]:  None.

R. ¶ 50.

Mr. Spinelli failed to disclose any of the facts about his medical history since the Policy's original issuance. R. ¶ 51. Specifically, Mr. Spinelli failed to report that in 1985 he was diagnosed and treated for stenosis of two coronary arteries, severe GERD, a bladder tumor, angina and coronary artery disease, and, less than two weeks before submitting his reinstatement application, lung cancer. R. ¶¶ 51, 54.

The following is printed on the final page of the reinstatement application directly above the signature line that Mr. Spinelli signed:

> I (We) affirm the truth of all statements made in the application for insurance, and understand that the extension of time which is being granted to pay the

premium, and reinstatement of the said policy are made upon the truth of the representations made in this Application of Reinstatement.

We further agree that if, at any time within two years from the date of the approval hereof any statements herein made shall be found to be untrue in any respect, the Company shall have the right to declare null and void and of no effect the reinstatement of said policy as granted by the Company upon this application.

R. ¶ 52; Reinstatement Application, Ex. 10.

On April 21, 2001, Monumental Life received Mr. Spinelli's reinstatement application along with a payment of $76.53, which covered the outstanding premium balance. R. ¶ 53. On April 29, 2001, Monumental Life processed Mr. Spinelli's application and reinstated coverage. *Id.*

The Record indicates several stipulations relating to the reinstatement application made by Plaintiff while represented by former counsel. R. ¶¶ 54, 55; Stipulations, Ex. 11. Plaintiff stipulated that "the non-disclosure and/or concealment of material facts by Mr. Spinelli in the Reinstatement Application as set forth above materially affected the acceptance of the risk or the hazard assumed by Monumental Life." R. ¶ 55. Plaintiff further stipulated that "had Monumental Life known the true facts pertaining to Philip Spinelli's health and medical history, it would not have reinstated [Mr. Spinelli's policy] as applied for, but would have declined the Reinstatement Application." *Id.* Finally, Plaintiff stipulated that "the misrepresentations and concealment of material facts made by Phillip Spinelli in the Reinstatement Application … were made with actual intent to deceive Monumental Life." *Id.*

The Record containing the stipulations was filed July 5, 2006. Plaintiff's counsel was

14

not granted leave to file an appearance in this case until July 21, 2006, and thus was not responsible for the stipulations. Under the circumstances of this case, the Court will not consider those ultimate facts to be established by stipulation. The transactional stipulations describing the payment and record keeping history, however, will be accepted as true because there is no contrary proof.

### G. MONUMENTAL LIFE'S DENIAL OF PLAINTIFF'S CLAIM FOR BENEFITS

Dr. Mason ultimately concurred with Dr. Cozzi's diagnosis that Mr. Spinelli had lung cancer, and began radiation therapy on Mr. Spinelli in early May 2001. R. ¶¶ 56-57. On February 25, 2003, Mr. Spinelli succumbed to his disease, dying of metastic carcinoma of the lung. R. ¶ 58.

On March 27, 2003, Plaintiff submitted a claim to Monumental Life for life insurance benefits allegedly provided under the Policy. R. ¶ 59. Because Mr. Spinelli's death occurred less than two years from the effective date of the Policy's reinstatement, which was within the contestable period, Monumental Life performed a routine claim investigation. R. ¶¶ 58, 60. Monumental Life obtained Mr. Spinelli's medical records, which verified that he had a significant medical history he had failed to disclose. R. ¶ 60.

On December 18, 2003, Monumental Life sent a letter to Plaintiff confirming the Policy had previously lapsed effective March 7, 2001, and that, as part of Mr. Spinelli's reinstatement application, dated April 21, 2001, he failed to disclose his past medical history. R. ¶ 61. Monumental Life denied Plaintiff's claim, rescinded the Policy, and refunded the premiums previously paid since the date of reinstatement, noting that if it had been aware of

Mr. Spinelli's medical history at the time of his reinstatement application, coverage would not have been reinstated. *Id.*

The Court finds that reasonably careful and intelligent persons would have regarded Mr. Spinelli's diagnosis with heart disease and cancer as substantially increasing the risk assumed by Monumental Life, so as to cause rejection of Mr. Spinelli's application for reinstatement.

## II. TRIAL ON THE PAPERS

This case comes before the Court by means of a trial on the papers pursuant to Federal Rule of Civil Procedure 52(a), in which the parties have submitted briefs, supporting exhibits, and developed a thorough compilation of stipulated facts, which constitute the record in this case. *See Sullivan v. Bornemann*, 384 F.3d 372, 375 (7th Cir. 2004) (noting that a district court decision rendered after reviewing the stipulated facts of the parties was more akin to a bench trial than summary judgment and was thus governed by Federal Rule of Civil Procedure 52(a)); *see also Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (holding that a judgment based upon a stipulation of facts that made up an administrative record was treated as a bench trial governed by Fed. R. Civ. P.52(a)); *SparkNet Communications, L.P. v. Bonneville International Corp.*, 386 F. Supp. 2d 965 (N.D. Ill. 2005) (conducting a trial on the papers in a trademark infringement case); Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment*, Fed. Law., Aug. 1999, at 30 (analyzing the advantages and disadvantages of utilizing a trial on the papers as an alternative to cross motions for summary judgment). The parties have

agreed to proceed in this manner and to waive their right to present oral testimony and to appear before a jury.

## III.  DISCUSSION

## A.  ORIGINAL POLICY LAPSED

Plaintiff alleges that the Policy did not lapse and "should have remained in effect without cancellation," thus bypassing any need to analyze the reinstatement application. Plaintiff bases her assertion on two arguments: (1) the monthly premiums had been paid, and (2) the lapse was ineffective because Defendant failed to provide proper notice in accordance with the terms of the Policy.  The Court rejects both assertions.

### 1.  The Policy's Cash Value was Insufficient to Cover Monthly Premium Payments

Status Reports verify that after the October 23, 2000 premium payment, the Policy fell into a negative cash value and, after missing November's premium, any subsequent payments failed to make up premium deficiencies for the months of December 2000, January 2001, and February 2001.  Therefore, the Court finds that the Policy's cash value was insufficient to cover the required monthly premium payments and the Policy properly lapsed.

### 2.  Proper Notice was Provided

Plaintiff alleges that even if the Policy had insufficient cash value, the Policy should not have lapsed since no notice was ever received by Mr. Spinelli.  Plaintiff properly asserts that written notice of lapse must be sent to the policy holder's last known address for the lapse to take effect.

### a. Plaintiff Admits That She Did Not Open Monumental Life Statements or Correspondences Addressed to Mr. Spinelli

While Plaintiff asserts that Monumental Life failed to provide proper notice**,** she has stipulated and testified that Mr. Spinelli handled all correspondences and communications with Monumental Life and she did not open any Monumental Life statements or correspondences addressed to her husband.  Plaintiff has failed to provide the Court with any evidence establishing that proper notice was not provided.

### b. Proof of Notice May Be Established as a Matter of Law

While an insurer is required to provide notice to a policy holder that a premium is overdue before rescinding that policy, it is only required to prove that a legally sufficient notice was "addressed and mailed," not that it was received by the policy holder.  *Hotaling, M.D. v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 579 (7th Cir. 2001).  An insurer may prove that notice was addressed and mailed either by an affidavit from a member of the company responsible for mailing such notices or by presenting records that confirm the particular notice was sent consistent with the company's customary practices.  *Id*. at 579-81.

Here, Defendant has provided both an affidavit and evidence of a correspondence log, which indicate that grace and lapse notices were sent to Mr. Spinelli at his home address.  Ms. Baker confirmed that Monumental Life maintains an electronic correspondence log of grace and lapse notices that it generates and mails.  The log confirmed that Monumental mailed two grace notices and a lapse notice informing Mr. Spinelli that his Policy had lapsed.  The Court finds that the correspondence log maintained by Monumental Life establishes that

18

grace and lapse notices were sent to Mr. Spinelli at his home address and therefore concludes that notice was properly provided.

## B.  DEFENDANT DID NOT WAIVE RESINSTATEMENT REQUIREMENTS

### 1.  Plaintiff's Waiver Argument Is Timely

Plaintiff contends that Monumental Life is estopped to deny that it waived its right to terminate Plaintiff's policy for nonpayment of premiums because it neglected to terminate the policy for nonpayment on previous occasions.  Plaintiff's Complaint did not assert this waiver argument, but leave to amend pleadings should be freely given.  Fed. R. Civ. P. 15(b).  Undue delay and undue prejudice to an opposing party are appropriate reasons for denying an amendment.  *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).  Here, Defendant asserts both undue prejudice and undue delay in its brief.  It claims that Plaintiff's raising of new arguments only after discovering that the joint record defeats her claim caused undue prejudice, and that Plaintiff's new argument was presented with undue delay, given that she had adequate documentation on which to base her argument since early in the discovery process.  The delay was not undue, however, because Plaintiff was forced to retain substitute counsel, who had no role in drafting the Complaint, performing discovery, or compiling the Record.  Further, Defendant has not shown any prejudice that it suffered as a result of delay.  Plaintiff is thus permitted to raise her waiver theory.

### 2.  Plaintiff's Waiver Argument Fails on the Merits

Illinois law disfavors forfeiture of life insurance policies. *Time Ins Co. v. Vick*, 250 Ill. App. 3d 465, 469 (1993). Where an insurer, by an act or course of conduct, continues to recognize a policy as intact despite the insured's failure to make timely payments, the insurer waives the forfeiture provision in the policy. *Id.* Moreover, the insurer will be estopped from claiming a forfeiture if the insurer misleads the insured to believe that a forfeiture will not be enforced. *Id.* By the same token, if the insurer requires a formal reinstatement application after the close of the contractual grace period along with sufficient reinstatement payment, the insurer is not estopped from seeking recission of the policy. *Id.* (finding no prejudicial reliance by insured where insured was aware that insured's policy had lapsed and failed to disclose material medical information on the application for reinstatement).

Here, every monthly premium payment that Plaintiff missed can be accounted for and categorized into one of three categories. Monumental has thoroughly documented compliance with its policies. For every monthly payment Mr. Spinelli missed, the cash value of the policy covered the missing payment, Mr. Spinelli made his payment within the grace period, or the policy lapsed and Monumental required a reinstatement application and payment. Thus, Monumental Life did not mislead Plaintiff to believe that payments would be accepted beyond the grace period without formal reinstatement procedures, and Plaintiff's waiver argument fails.

## C. DEFENDANT RIGHTFULLY RESCINDED THE REINSTATED POLICY

### 1. Misrepresentation in an Application for Insurance

An applicant for insurance commits a misrepresentation on her application by either affirmatively making a statement of fact that is untrue or passively omitting a fact while answering an inquiry. *Methodist Med. Ctr. of Illinois v. Am. Med. Sec. Inc.*, 38 F.3d 316, 319 (7th Cir. 1994). The mere fact that a misrepresentation has occurred, however, does not provide the insurance company with *carte blanche* authority to rescind the policy. *Id.* Rather, to deny benefits, the insurance provider must demonstrate that the misrepresentation was made with an actual intent to deceive or the misrepresentation materially affected the acceptance of the risk or hazard assumed when coverage was originally granted. *Id.*

### 2. Materiality of a Misrepresentation

The materiality of a misrepresentation is a question of fact at trial. *Northern Life Ins. Co. v. Ippolito Real Estate P'ship*, 234 Ill. App. 3d. 792, 802 (1992). Materiality is determined by an objective standard, which asks whether reasonably careful and intelligent persons would have rejected an application for insurance given full disclosure of the insured's health status. *Id.* at 801. An insurer, when reviewing an applicant's answers to inquiries, is entitled to rely on those answers when calculating its risk without conducting any independent investigation into the accuracy of the answers. *New England Mutual Life Ins. Co., v. Bank of Illinois in DuPage*, 994 F. Supp. 970, 977 (N.D. Ill. 1998). Additionally, "[i]ncomplete answers or a failure to disclose material information on an application may constitute a misrepresentation when the omission prevents the insurer from adequately

assessing the risk involved." *Methodist Med. Ctr.*, 38 F.3d at 319, (citing *Garde v. Country Life, Ins. Co.*, 147 Ill. App. 2d 1023, 1031 (1986)). Finally, the failure to disclose heart disease and cancer has been deemed material to an insurer's assessment of risk. *C.f. Methodist Med. Ctr.*, 38 F.3d at 321 (court found heart disease to be a material factor in assessing the insurance risk in summary judgment context); *Pistas v. New England Mut. Life Ins. Co.*, 843 F.2d 1038, 1040 (7th Cir. 1988) (life insurance applicant had to know that his failure to disclose that he had cancer was material to the insurance company's decision to offer him coverage). Therefore, the Court finds that Mr. Spinelli's ommisions were a material misrepresentation that prevented Defendant from adequately assessing the risk.

### 3. Mr. Spinelli's Material Misrepresentation Entitles Monumental Life to Rescind His Reinstated Policy as a Matter of Law

In this case, Plaintiff stipulated that during the 1990's, Mr. Spinelli was diagnosed and treated for heart disease, and medical records confirm that he was diagnosed with lung cancer two weeks prior to submitting his reinstatement application. Mr. Spinelli failed to disclose either of these conditions or his related treatment when answering inquiries on his reinstatement application. Plaintiff admits that Mr. Spinelli's signature appeared on the application for reinstatement, which disclosed none of Mr. Spinelli's conditions. An applicant's failure to disclose heart disease and lung cancer constitutes a misrepresentation that is material to an insurer's assessment of an assumed risk as a matter of law. *Methodist Med. Ctr.*, 38 F.3d at 321; *Pistas*, 843 F.2d at 1040.

Plaintiff asserts that Mr. Spinelli merely signed his name to the reinstatement

application before submitting it, and intimates that Monumental Life's insurance agent was responsible for writing "None" on the reinstatement application in response to the question asking whether he had any ailments or had been attended by a physician. An insurer may be estopped from asserting any misrepresentations as a defense in an action for payment under an insurance policy where the insurer's agent is primarily responsible for the misrepresentation. *Royal Neighbors of America v. Bowman*, 177 Ill. 27, 32 (1898) (insurer was estopped to deny the validity of the policy where the insured party verbally provided candid and forthright responses to an agent filling in a reinstatement application for the insured, but the agent failed to include material information provided by the insured); *Beck v. Capital Life Ins. Co.* 48 Ill. App. 3d 937 (1977) (insurer was estopped from asserting any misrepresentations as a defense in an action for payment under the policy where insurer's agent completed an application for insurance and then had the insured sign the application). Even assuming Plaintiff's unsupported assertion that Monumental Life's agent wrote "None" on the application is true, Mr. Spinelli's case is distinguished from the cited case law because Mr. Spinelli knew he had been diagnosed with coronary artery disease and cancer, but withheld this information on his application and thereby materially affected Monumental's risk. Mr. Spinelli was not told by an agent of the insurer to sign an application *after* the agent filled it out; rather, he unilaterally signed the application without disclosing information that was within his knowledge, and then submitted it. Therefore, because Mr. Spinelli's application for reinstatement contained material misrepresentations, the Court finds that Monumental Life is entitled to rescind Mr. Spinelli's reinstated Policy as a matter of law.

### 4. Any Failure on Monumental Life's Behalf to Preserve Mr. Spinelli's Reinstatement Application Does Not Raise a Spoliation Claim

Plaintiff asserts that Defendant has failed to produce Mr. Spinelli's original reinstatement application and that such a failure raises a spoliation claim against Defendant. In Illinois, spoliation is not an independent cause of action; it is a claim under negligence law. *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 192-93 (1995). Thus, the elements of duty, breach, causation, and damages must be established to allege spoliation successfully. *Id.* There is no general duty to preserve evidence, but a duty can arise out of an agreement or contract (*e.g.*, an insurance contract) "if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Id.* at 209. A duty exists for a potential litigant to take reasonable measures to preserve relevant, material evidence. *Shimanovsky v. General Motors Corp.*, 181 Ill.2d 112, 121-22 (1998).

The Record does not indicate when, if at all, the reinstatement application was destroyed.[3] As such, it is difficult to know whether Monumental Life had reason to know the reinstatement application could be material to any potential litigation at the time it allegedly destroyed the original reinstatement application. Regardless, the Plaintiff's spoliation claim fails because there was no harm to Plaintiff resulting from any alleged document destruction. Janice Spinelli's own testimony acknowledged that it was her late husband's signature that appeared on a photocopied version of the reinstatement application. Spinelli Dep. Ex. 3 ¶60. The Court finds that Mr. Spinelli did sign the reinstatement application, and failed to list any of his known ailments. This finding alone is sufficient to hold that Monumental Life was justified in rescinding the reinstated policy, and the original

---

[3] A copy of the reinstatement application is, however, present in the Record.

reinstatement application would therefore have no additional probative value. Plaintiff suffered no damages in negligence and her spoliation claim fails. [4]

## IV. CONCLUSION

The Policy's cash value was insufficient to cover the monthly premium payments. Grace and lapse notices were provided in accordance with the terms of the Policy. Thus, the Policy properly lapsed. Monumental Life did not waive its right to require proper reinstatement procedures. Finally, despite the Court's sympathies for Plaintiff in the loss of her husband and lapse of his life insurance policy, Monumental Life is entitled to rescind Mr. Spinelli's reinstated Policy as a result of Mr. Spinelli's material misrepresentation or omission in his reinstatement application.

**Pursuant to the foregoing findings of fact and conclusions of law, the Court enters judgment in favor of Defendant, Monumental Life, and against Plaintiff, Janice Spinelli, on Plaintiff's complaint and Defendant's counterclaim.**

**SO ORDERED THIS 1st DAY OF MARCH 2007.**

---

[4] Defendant asserts that the spoliation claim also fails on statutory grounds. Section 5-125 of Illinois' Electronic Commerce Security Act provides that a rule of law requiring maintenance of information may be satisfied by maintenance of an electronic record. 5 ILCS 175/5-125. The Court need not resolve this issue, however, because Plaintiff's spoliation claim fails regardless, as Plaintiff suffered no harm as a result of the alleged spoliation.

_Morton Denlow_ (signature)

_____

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Lori S. Klingman
2626 Lakeview Avenue
Chicago, IL 60614

Counsel for Plaintiff

William A. Chittenden, III
Michael B. Galibois
Chittenden, Murday & Novotny LLC
303 W. Madison Street, Suite 1400
Chicago, IL 60606

Counsel for Defendant